# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

**JEFFREY WALTER FOSTER,**  )
)
       **Plaintiff,**    )
)
       v.    )    Case No. CIV-13-04-RAW-SPS
)
**CAROLYN W. COLVIN,**   )
**Acting Commissioner of the Social**  )
**Security Administration,**[1]    )
)
       **Defendant.**   )

## REPORT AND RECOMMENDATION

The claimant Jeffrey Walter Foster requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. As set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity (RFC) to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on March 3, 1965, and was forty-six years old at the time of the administrative hearing. (Tr. 27, 103). He completed the ninth grade while attending special education classes, and has worked as a laborer. (Tr. 20, 139). The claimant alleges inability to work since March 1, 2010, due to chronic hepatitis C, bi-polar disorder, illiteracy, and adult Attention Deficit Hyperactivity Disorder. (Tr. 138).

### Procedural History

On April 27, 2010, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 29, 2011. (Tr. 12-21). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that

the claimant had the ability to perform a full range of work at all exertional levels. Nevertheless, he imposed the psychologically-based limitations of simple tasks with routine supervision, inability to relate to supervisors and peers on a superficial work basis, limited contact with the general public, but the ability to adapt to a work situation. (Tr. 17). The ALJ concluded that although the claimant was unable to perform his past relevant work, he was nevertheless not disabled because there was other work he could perform in the national and regional economy, *i. e.*, dishwasher and laundry worker. (Tr. 21).

## Review

The claimant contends that the ALJ erred: (i) by improperly determining his RFC, (ii) by failing to properly assess his credibility, (iii) that the Appeals Council erred by failing to consider new evidence submitted following the ALJ's decision, and (iv) by failing to fully develop the record. The undersigned Magistrate Judge finds the claimant's first and third contentions persuasive.

The ALJ found that the claimant had the severe impairments of borderline intellectual functioning and substance abuse, as well as the nonsevere impairments of hepatitis C, hypertension, obesity, back pain, restless leg syndrome, shortness of breath, bi-polar disorder, and ADHD. (Tr. 14-15). The medical evidence relevant to this appeal reflects that the claimant reported mild to moderate cervical spine pain as early as 2008, as well as leg pain and low back pain in 2009 and again in March 2010. His treatment was largely over-the-counter medications due to his substance abuse and recent rehab

stint. (Tr. 204, 208, 210-214). A consultative examiner saw the claimant on June 24, 2010, and the claimant reported, in part, that he was having lower leg pain when walking. As part of his observations, Dr. Ronald Schatzman noted that the claimant walked with a "strange gait," but that it was safe and stable with appropriate speed and without the use of assistive devices. (Tr. 217-219). Dr. Schatzman assessed the claimant with hypertension by history, bipolar by history, meth abuse, and adult ADHD by history. (Tr. 219). An intellectual assessment of the claimant revealed that he had a Full Scale IQ score of 71, placing his overall cognitive functioning in the borderline intellectual functioning range suggestive of mild organic impairment. (Tr. 224-226).

Evidence submitted to the Appeals Council reflects that the claimant's treating physician Dr. Robert Williams completed a Medical Source Statement (MSS) of the claimant's ability to perform work. His diagnosis of the claimant included chronic low back and leg pain and degenerative joint disease. (Tr. 259). He indicated that the claimant could not use his hands for fine manipulation, could never crouch or kneel, only occasionally crawl, climb, and stoop, but could frequently bend, squat, and reach above his head. (Tr. 259). Additionally, he checked that the claimant would need to lie down at unpredictable intervals, that his symptoms and pain were severe enough to interfere with his attention, concentration, and ability to tolerate work stress, and that these impairments would result in absence from work more than four days per month. Finally, he indicated that the claimant would need a sit/stand/walk option at will if employed. (Tr. 260). In support, Dr. Williams cited "continuous leg and low back pain[,] hands frequently go

numb[, and] takes mood/psych medication." (Tr. 260). Further records submitted indicate that the claimant had an open fracture of his tibia and fibula in 2001. (Tr. 283-285).

At the administrative hearing, the claimant testified that his pain is fairly constant and that he takes Advil and nothing stronger because he had been to rehab for methamphetamine, but that the Advil does not really stop his pain. (Tr. 32). He stated that the pain is the worst in his feet, that it wakes him up at night, and that he has to get up several times to aid the circulation in his legs at night. (Tr. 33). He stated he could sit for twenty minutes before his legs begin to go to sleep, that he can stand twenty-five to thirty minutes, walk up to three blocks, and lift up to 15 pounds. (Tr. 35-36).

In his written opinion, the ALJ summarized the claimant's hearing testimony and a majority of the medical evidence. He noted the claimant's history of substance abuse and borderline intellectual functioning, as well testing that found the claimant to be functionally illiterate. (Tr. 17-18). However, he found that the claimant's self-reports of intellectual limitation were inconsistent with his daily activities. He further noted that the claimant had claimed unemployment benefits after the alleged disability onset date (during which time the claimant must state he is able to work), and that the claimant had lost a previous job due to a change in leadership rather than his own disabilities. (Tr. 19). The ALJ further acknowledged state reviewing physician findings that the claimant could perform medium work, which he gave "some weight," and gave "great weight" to the consultative psychological exams. (Tr. 19). The ALJ gave no reasons for the weight he

afforded these opinions, and made no mention of the claimant's non-severe impairments at step four. (Tr. 20).

The claimant argues that the ALJ erred in failing to classify his back and leg pain as severe impairments. Because the ALJ did find that the claimant had severe impairments, any failure to find the claimant's additional impairments severe at step two is considered harmless error because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC at step four. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."), *quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004) and 20 C.F.R. § 404.1523. *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'")

[emphasis in original] [citations omitted]. But here the error *was not* harmless, because although the ALJ mentioned each impairment at step two the ALJ entirely failed to mention, much less consider the "cumulative effect of claimant's impairments," at step four. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004). *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion].

The claimant's contention that the ALJ failed to properly evaluate all the medical evidence is bolstered by evidence submitted to the Appeals Council after the hearing, which included additional treatment records containing Dr. Williams's MSS, as well as older medical records. The Appeals Council was required to consider this evidence if it is: (i) new, (ii) material, and (iii) "related to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). The Appeals Council *did* consider it this evidence (Tr. 4), and the undersigned Magistrate Judge has no difficulty concluding that it does qualify.

Evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). The additional records submitted to the Appeals Council were clearly new evidence. In particular, Dr. Williams's MSS and the treatment

records as to the claimant's former injury were never presented to the ALJ prior to his decision and were thus neither duplicative nor cumulative. Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96. The evidence must "reasonably [call] into question the disposition of the case." *Id. See also Lawson v. Chater*, 1996 WL 195124, at *2 (10th Cir. April 23, 1996). In discounting the claimant's credibility as to the severity of his impairments and his ability to do work, the ALJ relied, at least in part, on the conflict between his testimony and medical records, or lack thereof. But Dr. Williams's MSS indicated that the claimant was not capable of working on a full-time basis due, in part, to his chronic back and leg pain. (Tr. 259-260). This evidence suggests the claimant has impairments discounted or completely unaccounted for in his RFC, and it is therefore clearly material.

Finally, the evidence is chronologically relevant if it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). The claimant meets the insured status through December 31, 2014, so all of the records are relevant to the claimant's condition as to the existence or severity of his impairments. *See Basinger v. Heckler,* 725 F.2d 1166, 1169 (8th Cir. 1984) ("[M]edical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status."), *citing Bastian v. Schweiker,* 712 F.2d 1278, 1282 n.4 (8th Cir.

1983); *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983); *Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir. 1981); *Poe v. Harris,* 644 F.2d 721, 723 n. 2 (8th Cir. 1981); *Gold v. Secretary of H.E.W.,* 463 F.2d 38, 41-42 (2d Cir. 1972); *Berven v. Gardner,* 414 F.2d 857, 861 (8th Cir. 1969).

The evidence presented by the claimant after the administrative hearing thus *does* qualify as new and material evidence under C.F.R. §§ 404.970(b) and 416.1470(b), and the Appeals Council considered it, so the newly-submitted evidence "becomes part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). The ALJ had no opportunity to perform the proper analysis, and while the Appeals Council considered this new evidence, they failed to analyze it in accordance with the aforementioned standards. In light of this new evidence, the Court finds that the decision of the Commissioner is not supported by substantial evidence. On remand, the ALJ should re-assess the claimant's RFC in light of the new evidence, and then re-determine the work he can perform, if any, and ultimately whether he is disabled.

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand

the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 12th day of March, 2014.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma